[No. 1307, August 9, 1910.]

IN THE MATTER OF THE APPLICATION OF FRED
VANDERWORK, TERRITORY OF NEW MEXI-
CO., INTERVENOR, Appellants, v. J. M. HEWES
and E. A. DEAN, Appellees.

### SYLLABUS.

1. Laws of 1907, chapter 49, sec. 12, relates to public
and unappropriated waters within the Territory flowing in
streams and water courses.

2. Section 1, chapter 49, Act of 1907, does not give the
territorial engineer the power to grant application for seen-
age water.

3. Section 53, chapter 49, Laws of 1907, gives the terri-
torial engineer power to grant permits for such seepage
water only as comes from "constructed works" and this is
true regardless of whether the owner of the land upon which
the water appeared, applied for its appropriation or not.

4. "Constructed works" refers to constructed reservoirs
and ditches.

5. An artesian well is not "constructed works" under
chapter 49, Act of 1907.

6. Where seepage or percolating waters are from an
unknown source the territorial engineer has no jurisdiction
over such waters and no power to grant a permit to use
them.

7. A small quantity of water percolating to the surface
and forming a small basin and coming from a source un-
known is part of the land and each land owner can do with
it as he chooses.

8. The owners of such land and such waters need not
apply to the territorial engineer for a permit to appropriate
the water and the applying of this water to their lands is an
appropriation thereof.

9. The Act of 1907, chapter 49, does not empower the

territorial engineer to authorize another applicant to go up-on lands held in private ownership, construct ditches and appropriate seepage water or waters from snows, rain or springs, not traceable to or from a stream or water course. or from constructed works.

10. If any surplus exists, after owner of land on which seepage water exists, has appropriated all he desires to a beneficial use, and such seepage water is permitted to enter the land of another, that other has a perfect right to appropriate it also to a beneficial use, but his rights are subject to the prior right of first owner to apply all of the water to a beneficial use on his own lands.

11. Any surplus which may exist beyond the necessities of the owners indicated above, would not be subject to appropriation and distribution under chapter 49, Laws of 1907, but if subject to appropriation at all without the consent of the owners, it would be governed by the general law of prior appropriation which is applicable to the lands of the arid West.

12. It is not necessary for owner of lands on which there is seepage water not from "constructed works," to make application to the territorial engineer for appropriation of it, and failure to make such application does not warrant another to make application for its appropriation.

Appeal from the District Court for Eddy County before W. H. Pope, Chief Justice.   Affirmed.

Frank W. Clancy, Attorney General, and W. C. Reid for Appellants.

Seepage water of all kinds is subject to appropriation. Laws 1907, chapter 49, secs. 1, 53, 54; Samuel C. Weil on Water Rights in Western States, secs. 43, 102, 142, 360, 372; Millhiser v. Long, 10 N. M. 99; Civil Code California, sec. 1410; Katz v. Walkenshaw, 141 Cal. 166, 99 American St. Rep. 35; 70 Pac. 663; 74 Pac. 766; Cohen v. LaCanada Water Co., 76 Pac. 47; Cohen v. LaCanada

Water Co., 91 Pac. 584; ex parte Elam, 91 Pac. 811; Barclay v. Abraham, 64 L. R. A. 255; 100 American St. Rep. 365; Erickson v. Crookston Water Works, 111 N. W. Rep. 391, 8 L. R. A. New Series 1250; Kelly v. Natoma W. Co., 6 Cal. 108; Conger v. Weaver, 6 Cal. 557; 65 Am. Dec. 528; Eddy v. Simpson, 3 Cal. 253, 58 Am. Dec. 408; Hill v. Newman, 5 Cal. 446, 63 Am. Dec. 140; McDonald v. B. R. & A. W. Co., 13 Cal. 233.

"The question of riparian ownership is to be determined by state law." St. Anthony Water Falls Power Co. v. St. Paul Water Commissioners, 168 U. S. 366; Townsend v. State, 147 Ind. 624; Ohio Oil Co. v. Ind., 177 U. S. 190.

GRANTHAM & DYE for Appellees.

Percolating waters belong to the soil, form a part of the realty and may be used and controlled by the owner of the realty without regard to the effect of such use upon his neighbor's land or supply of water. Hanson v. McCue, 42 Cal. 308; Mosier v. Caldwell, 7 Nevada 363; Emporia v. Soden, 25 Kan. 410; Sullivan v. Northern Spy M. Co., 40 Pac. 709; Crescent Mining Co. v. Silver King M. Co., 54 Pac. 244; Willow Cr. Irr. Co. v. Michaelson, 60 Pac. 943; Harriman Irr. Co. v. Keel, 69 Pac. 710; Bruennig v. Dorr, 47 Pac. 290; Wolson v. Ward, 56 Pac. 573; Deadwood Cent. R. Co. v. Barker, 86 N. W. 619; Tyler v. Welch, 6 Ore. 198; Platt Valley Irr. Co. v. Buckers I. & M. Co., 25 Colo. 77, 53 Pac. 334; Boyce v. Cupper, 61 Pac. 642; Ogilvy Irr. and L. Co. 75 Pac. 598; Metcalf v. Nelson, 65 N. W. 911, 23 Pa. Rep. 528; Southern Pacific Railroad Co. v. Dufour, 19 L. R. A. 92; 108 N. Y. 400; 106 Penn. State 626; 51 Am. Rep. 542, and notes; 31 Am. State Rep. 438; 17 Am. State Rep. 796; 64 Am. Decisions 727, extended notes.

Besides the intent, which naturally precedes any definite action, appropriation consists of two things, diversion and application to beneficial use, and in case of irrigation the water must be applied to the land to make the appropriation complete. Mills Irrigation Manual, sec. 39, page 57; 45 Pac. 444; 34 Pac. 268.

Where seepage water is not from constructed works, it is not subject to appropriation. Mills Irrigation Manual, sec. 42, page 59; Slosser v. Salt River Val. Canal Co., 65 Pac. 332; Gould v. Canal Co., 76 Pac. 598; Reaffirmed 85 Pac. 117.

### STATEMENT OF THE CASE.

From the opinion of Hon. William H. Pope, the presiding Judge who tried the case in the court below, we adopt the following statement of the facts, disclosed by the record, and upon which a reversal is sought in this court.

"That some time in the latter part of the year 1906, there appeared upon the surface of the land of J. M. Hewes, one of the contestants, seepage water or spring water, from some unknown source, at a place where there had been no seepage or spring water for at least five years previous.

"That the flow increased during the winter of 1906-07, diminished during the summer of 1907, and again increased during the fall of 1907, to such an extent that it spread over the public road and onto adjoining land of E. O. Dean, contestant herein, and that by reason of an embankment constructed on the land of said E. O. Dean, across a draw or swale, the water backed over the public road.

"The road overseer of that district requested permission of Dean to cut the embankment and allow the water to flow down upon the land of Dean and relieve the public road. To this Dean consented, provided that he be allowed to make use of the water for irrigating his lands and to construct a ditch to convey the water to his farm lands for that purpose. About the same time or subsequently thereto, Dean secured permission from said Hewes to so use the water and did construct a ditch for that purpose. The court further finds that on February 6, 1908, Fred Vanderwork, applicant named above, filed an application in the office of the Territorial Engineer for a permit to appropriate the water, claiming it to be subject to appropriation under Chapter 49, Laws of 1907. The plan of Vanderwork, as shown by his plats and field notes,

being to construct a deep ditch through the land of Hewes so as to carry off the water and convey it by ditch a distance of about one mile, in order to use the same for irrigating lands belonging to Vanderwork.

"After publication of notice, protest was filed by said Hewes and Dean. Upon a hearing on the protest, by the Territorial Engineer, he dismissed the protest and approved the application of Vanderwork. From this decision Hewes and Dean appealed.

"By agreement of counsel the appeal was submitted to the Board of Water Commissioners upon briefs and the affidavits and records in the office of the Territorial Engineer, and the Board of Water Commissioners, after hearing and considering same, reversed the findings and holdings of the Territorial Engineer, and found that the water in controversy was not subject to appropriation by Vanderwork, whereupon Vanderwork has appealed said controversy to this court."

## OPINION OF THE COURT.

McFIE, J.—The main question for our consideration, is, whether or not the water involved in this controversy is public water subject to distribution by the Territorial Engineer under Chapter 49, Laws of 1907. It is clear that the application of Vanderwork for the appropriation of the water was made under that law and the permission granted by the engineer for the use of the water upon the lands of Vanderwork, necessarily assumes that the water which rises upon Hewes' land is subject to distribution under the provisions of the Act of 1907.

Section 12, Chapter 49, Laws of 1907, provides as follows:

"The Territorial Engineer shall have the supervision of the apportionment of the water in this Territory, according to the licenses issued by him and his predecessors and the adjudications of the courts."

This section, however, cannot be held to relate to waters held in private ownership or by prior appropriation, but must be held to relate to public and unappropriated waters within the Territory.

Section 1 of the Act of 1907, makes this clear, as it provides, that:

"All natural waters flowing in streams and water courses, whether such be perennial or torrential, within the limits of the Territory of New Mexico, belong to the public and are subject to appropriation for beneficial use."

This section expressly limits the operation of the Act of 1907 to natural public waters within the Territory of New Mexico, with the further limitation, that it is water flowing in streams and water courses. This section, necessarily, indicates the character of the waters to which the engineer's jurisdiction attaches for purposes of distribution as provided for in the act, with the single exception of the seepage water referred to in section 53, of that act.

The legislature, therefore, did not confer upon the Territorial Engineer jurisdiction for the distribution of all the waters within the Territory, but only over such public waters as are embraced in section 1, and the seepage waters referred to in section 53, subject to the conditions therein expressed.

The case at bar seems to furnish an excellent illustration of the correctness of the above construction.

In the first place it is admitted that the water involved in this case does not come from a stream or water course as defined in section 1, of the Act of 1907, but, on the contrary, its source is unknown. Such being the case, it is not contended by appellant that this water comes from either a stream or water course.

That it is seepage or percolating water, seems to be accepted by all parties. In fact, appellant's application for permit, states that it is seepage water and not tributary to any stream. Clearly, then, the Territorial Engineer had no authority to grant Vanderwork a permit to take this water under section 1, of the Act of 1907, but his authority to act must be found in section 53, if such authority existed.

Section 53 is as follows:

"In the case of the seepage water from any constructed works the owner of such works shall have had the first right to the use thereof upon filing and application

with the Territorial Engineer, as in the case of an original appropriation, but if such owner shall not file said application within one year after the completion of such works, or the appearance upon the surface of such seepage water, any party desiring to use the same shall make an application to the Territorial Engineer, as in the case of unappropriated water, and such party shall pay to the owner of such works reasonable charge for the storage or carriage of such water in such works; *Provided,* That the appearance of such seepage water can be traced beyond a reasonable doubt to the storage or carriage of water in such works."

Under the above section the only seepage water over which the engineer has power to grant permits for appropriation by applicants is seepage water from "constructed works."

The term "constructed works" is used in many of the sections of the Act of 1907, and, as was held by the Board of Water Commissioners, in its opinion overruling the Territorial Engineer, refers to constructed reservoirs and ditches. There being no proof of any such constructed works, or proof that the seepage water came from such works, the engineer was without authority under that section to grant permits for its appropriation by the appellant; and this is true regardless of whether the owner of the land upon which the water appeared, applied for its appropriation or not.

It is true, that one witness was of the opinion that the water came from a dynamited artesian well, three-fourths of a mile away. This, of course, was only a speculative opinion of the witness. Even if true, it would be immaterial, as this well would not be constructed works, within the act.

These sections are the only sections in the Act of 1907 conferring authority upon the Territorial Engineer to grant permits or licenses for the appropriation of water, and as the waters, for the use of which the engineer granted the appellant a permit, were not of the character embraced in either section 1 or 53, but were seepage or percolating waters from an unknown source, the lower

court, correctly held, that the Territorial Engineer had no jurisdiction over such waters and no power to grant appellant a permit to appropriate them.

Counsel for appellant further contend, that although appellant's permit for the appropriation of the water on Hewes' land may not be upheld, he has a superior right, by virtue of his attempted appropriation as against Dean, and even Hewes, the owner of the land upon which the water appears upon the surface, except as to so much as may be applied to a beneficial use by Hewes, upon his own land. Counsel, in his able brief, presents a line of authorities supporting the doctrine of *"a reasonable use"* rather than ownership of seepage or percolating waters upon lands in private ownership, and in a proper case, these cases would have great force, but in our opinion, the present case does not come within the doctrine laid down in Katz v. Walkinshaw, 141 Cal. 116, a leading case upon this subject.

This case, and many others, involve the disposition of percolating water from large areas of land saturated with artesian water, and the same rules of law pertaining to surface and subterranean streams is held to be applicable to such water, notwithstanding such water is not in a channel with well defined bed and banks, the accepted definition of streams and water courses.

The case, at bar, is entirely different, in this, that a small quantity of water percolates to the surface and forms a small basin, wholly upon the lands of Hewes, and coming from a source unknown, so far as the record discloses.

While this water sometimes recedes to the point of disappearance and returns again to the surface, it spreads over a part of Hewes' land at times and upon a portion of the lands of Dean, an adjoining owner.

It must be conceded, that for many years, the law as to such waters has been that the water was a part of the land and that each land owner could do with it as he chose. Southern Pacific R. R. Co. v. Dufour, 19 L. R. A. 92.

The case of Metcalfe v. Nelson, 65 N. W. 911, we re-

gard as directly in point under the facts in this case. The court in that case says:

· "As the hidden water in the plaintiff's soil belonged to him as a part of it, he might, by artificial means, separate it from the soil, and it would still belong to him. He might sink a well, into which such water would work its way, and the accumulation in the well would still be his, and subject to his proprietary control. Davis v. Spaulding, (Mass.) 32 N. E. 650.

"If the water which fills this spring is not subject to the law of running streams, but to that of percolating water, did the plaintiff lose his ownership of it when it appeared upon the surface?

"If a cloud had burst on plaintiff's land, and filled a cavity thereon with rain, it would, while so confined, belong to plaintiff, and we are unable to see why or how the question of ownership can be made to depend upon which way the water comes from. Suppose this percolating water appeared at the surface only at the point of the spring, and at once sunk away again into the surrounding soil, resuming its character of wandering, seeping water, would the plaintiff's proprietary rights come and go with the appearance and disappearance of the water? It must be remembered that we are not dealing with a running stream, or with riparian rights, but simply with percolating waters which have combined and struggled to the surface on plaintiff's land. We think the plaintiff had more than the ordinary usufruct in the water of this spring, so long, at least, as it was held in the spring. He might consume or dispose of it all if he chose. He might convey it away in pipes, or carry it off in tanks. If medicinal, he might bottle it, and sell it for the healing of the nations. It would be inconsistent with the maintenance of such right, in plaintiff to allow that the defendant or, any other stranger had also the right, in hostility to the plaintiff, to take and carry away water from the same spring.

"While it may not be technically correct to say that the land owner is the absolute owner of percolating waters gathered into a spring or well, such is often the expression of the courts and text writers, and probably means

Vanderwork v. Hewes & Dean.

what, in respect to water, is practically equivalent to ownership, * * * the exclusive right to use and dispose of it. While the precise question presented by this case appears to be novel, there are many cases which recognize the right of the owner of land upon which a spring so appears to sell and dispose of the right to all or a portion of the water it supplies."

The court below affirmed the decision of the Board of Water Commissioners, overruling the Territorial Engineer in granting Vanderwork a permit to appropriate this water, and in doing so the court said:

"In the opinion of the court, this water on the land of Hewes and Dean is not subject to appropriation by any one without their consent, so as to deprive them of the use thereof on their land. The court is further of the opinion, that Hewes and Dean did not have to apply to the Territorial Engineer for a permit to appropriate this water, and that the applying of this water to their lands was an appropriation thereof."

This, we believe, to be a correct statement of the right of the parties under the law, as it is immaterial whether Hewes was the absolute owner of the water on his land or had the exclusive right to appropriate it and apply it to a beneficial use upon his lands. Hewes' testimony is to the effect that he was applying the water to a part of his lands and was preparing to use it upon one hundred acres of his land. He certainly has the right to do this if he can.

The court below found, that the water percolating to the surface on Hewes' land "does not flow in a defined channel, or stream, but spreads over the sod, following the swales on the surface of the land of Hewes and Dean."

The appellant, under his permit from the Territorial Engineer claims all of the water which reaches the lands of Dean in this way, notwithstanding, Dean, with the consent of Hewes, has constructed a ditch or ditches to receive and conduct any surplus water which may reach his land, and claims the right to its use upon fifty acres of his land, and he has, undoubtedly, the better right to it as a prior appropriator, as between himself and Vanderwork.

It would be doing violence to the Act of 1907, to hold, that the Territorial Engineer was empowered by it, to authorize another applicant to go upon lands held in private ownership, construct ditches and appropriate seepage water or waters from snows, rain or springs, not traceable to or forming a stream or water course, or from constructed works, as the limitations contained in sections 1 and 53, defining the waters over which the engineer has been given jurisdiction, plainly indicates.

In our opinion, therefore, if any surplus water exists, after Hewes has appropriated to a beneficial use, all he desires, and is permitted to enter the lands of Dean, he has a perfect right to appropriate it also to a beneficial use; but the rights of Dean are subject to the prior right of Hewes to apply all of the water to a beneficial use on his lands.

As to the water in controversy in this case, any surplus which may in future exist beyond the necessities of Hewes and Dean, would not be subject to appropriation and distribution under Chapter 49, Laws of 1907, but, if subject to appropriation at all without the consent of Hewes and Dean, it would be governed by the general law of prior appropriation which is applicable to the arid lands of the West.

This water, not being seepage water from constructed works, and therefore, not subject to distribution under the Act of 1907, it was not necessary for Hewes to make application within a year to the Territorial Engineer for the appropriation of it, and his failure to make application, as provided in section 53, did not warrant an application for the appropriation of it by the appellant.

The decision of the lower court is affirmed with costs, and it is so ordered.

Associate Justice Wright, who did not hear the argument of this case, did not participate.