654 P.2d 537

**In the Matter of Applications RA–2009–S–3 and RA–2009–S–4 of the City of Roswell to Drill Two Supplemental Wells and Change the Place of Use of the Underground Waters of the Roswell Underground Water Basin.**

**S.E. REYNOLDS and Roswell-Artesian Waters and Users' Association, Appellants,**

v.

**CITY OF ROSWELL, Appellee.**

**No. 13970.**

Supreme Court of New Mexico.

Nov. 3, 1982.

Richard A. Simms, Jay F. Stein, Sp. Asst. Attys. Gen., Santa Fe, for appellants.

Paul W. Eaton, Jr., K. Douglas Perrin, Hinkle, Cox, Eaton, Coffield & Hensley, Roswell, for appellee.

## OPINION

FEDERICI, Justice.

Application was made in 1977 to the State Engineer pursuant to Section 72–12–7, N.M.S.A. 1978, by appellee, City of Roswell (City), for a permit to supplement existing water rights located in the vicinity of the Roswell Industrial Air Center (RIAC) and to change the place of use. The application was protested by appellant, Roswell-Artesian Water Users Association (Association) on behalf of its members. The matter was heard by the State Engineer based upon a stipulation between the applicant and protestant. The application was approved by the State Engineer subject to conditions designed to prevent the impairment of existing rights.

The City appealed to the District Court of Chaves County. Trial *de novo* was held by the trial court as provided by Section 72–7–1, N.M.S.A. 1978. The City objected to the conditions prescribed in the order of the State Engineer. The district court approved the City's application but deleted the return flow conditions which had been incorporated in the State Engineer's order. The State Engineer appealed. We affirm the trial court.

In 1968 the City acquired the Walker Air Force Base land and facilities from the United States government, and the area was subsequently incorporated within the municipal boundaries of the City. The grant of the Air Base included its entire water rights. The Air Base had been granted the right to appropriate 2,500 acre

feet of underground water per annum to be used at the Air Base. The resulting effluent was used to water the Air Base golf course or was sold to farmers near the Air Base. In the acquisition of the Air Base and its water rights the City was given the right to use 2,500 acre feet of water per annum for "municipal purposes" at the site of the Air Base. After the City acquired the Air Base it maintained the Air Base sewage plant for about five years. During that period, the name of Walker Air Force Base was changed to Roswell Industrial Air Center (RIAC). In 1974 the City abandoned the Air Base sewage plant and piped the sewage to its existing municipal sewage plant which is located on the east side of the city. From there, treated effluent has been sold to some farmers located east of the City, and has been sold to the Roswell Country Club for fairway watering purposes, or has been discharged directly into the Hondo River which runs through the City and empties into the Pecos River several miles east of the City.

When the existing RIAC wells began to weaken, the City applied to the State Engineer for a permit to drill supplemental wells so that it could continue to pump what it considered to be its entire appropriative right of 2,500 acre feet of water. In addition, because the RIAC had become part of the municipality, the City sought by its application to incorporate the 2,500 acre feet water right into its municipal system by simply changing the place of use of the water from the RIAC sector of the City to the entire City.

The State Engineer granted the City's applications, expressly finding that "the granting of the applications will not impair or detrimentally affect any existing water rights." However, the State Engineer attached conditions to the permit. Basically, he required that the City discharge into the Hondo River a certain ratio of sewage effluent at various locations. The ratio and the locations were to be the same as those existing during the period from November 1, 1973, to October 31, 1977. The State Engineer's conditions required that the City either continue selling treated effluent to the farmers east of the City and to the Roswell Country Club or to continue discharging treated effluent directly into the Hondo River.

The district court found that the City intended at some point in the future to reuse its sewage effluent in its municipal system, which would require it to cease selling the effluent to others or discharging into the Hondo River part or all of that effluent. The court also found that the City's proposed partial change of place of use would not impair or detrimentally affect any existing water rights.

Based upon the above facts and findings, the district court entered the following conclusions:

2. The granting of the partial change of place of use sought by the City of Roswell will not impair or detrimentally affect any existing water rights.

3. The City of Roswell's sewage effluent is private water which the City may use or dispose of as it wishes. To the extent that the effluent is discharged into the Hondo River or other natural stream of [sic] water course, the effluent may also be deemed to be artificial surface water within the meaning of Sec. 72–5–27, N.M. S.A. 1978.

4. Appropriators or users of an artificial flow of water cannot compel the City to continue the supply of water in the absence of a contract, grant, dedications [sic] or condemnation, nor can the State Engineer require the City to continue that supply of water.

5. The City of Roswell as the appropriator of water under its licenses and permits has the right to consumptively use all waters legally appropriated by it under said water rights.

6. The State Engineer erred in wrongfully limiting the consumptive use under the City of Roswell's water rights by conditioning his approval of Roswell's Application to partially change the place of use of such water.

The issue in this appeal is whether the State Engineer, in granting a permit

for change of place of use and after determining that the change of place of use will not impair existing rights, may apply conditions which require that sewage effluent resulting from the use of the water must be returned to the Hondo River because the effluent is "public" water and not private water. The trial court held that the sewage effluent was private water and not public water. Limited to the specific facts in this case, we agree with the trial court.

The State Engineer's authority to attach conditions in the approval of a change in location of wells or to change the place of use of water from those wells is derived from Section 72–12–7(A), N.M.S.A. 1978, which provides:

The owner of a water right may change the location of his well or change the use of the water, but only upon application to the state engineer and upon showing that the change will not impair existing rights. The application may be granted only after such advertisement and hearing as are prescribed in the case of original applications.

In *City of Roswell v. Berry,* 80 N.M. 110, 452 P.2d 179 (1969), the Supreme Court held that the State Engineer had the right to attach conditions to applications for permits in order to protect existing rights. The Court said:

The principle underlying the statutory requirement of application, notice and hearing is to insure that the *change proposed in the application* will not impair the rights of other appropriators. [Citations omitted.]

In deciding the issue of impairment, the State Engineer is not limited to either an approval or rejection of the application in toto. In order to prevent an impairment of rights, he has authority to approve an application subject to conditions.

*Id.* at 112, 452 P.2d at 181 (emphasis added).

*See also City of Roswell v. Reynolds,* 86 N.M. 249, 522 P.2d 796 (1974); *City of Albuquerque v. Reynolds,* 71 N.M. 428, 379 P.2d 73 (1962). Thus, it appears that the State Engineer has authority to impose conditions on Roswell's application for a change in place of use if the change *as stated in the application* will impair the rights of others. Consequently, if the State Engineer had found that the proposed change in place of use of the 2,500 acre foot water right from one part of the City (at RIAC) to all parts of the City, as stated in the City's application, would impair the rights of other water users, he could have imposed conditions designed to prevent that prospective impairment. On the contrary, the State Engineer did not so find, undoubtedly because there was no such impairment to existing rights. In the trial *de novo,* the district court likewise found that no impairment to the existing rights of others would result in the use by the City of the 2,500 acre feet throughout its entire municipal system rather than in only one specific part of the City.

What must be kept in mind is that in the proceedings before the State Engineer and subsequently in the hearing before the trial court the conditions prescribed by the State Engineer do not have a direct relationship to the purpose for which the City filed its application. The evidence establishes that the present use of the water does not affect the available amount of sewage effluent. The trial judge recognized this in his statement which appears in the record at pages 33 and 34.

The testimony before the Court is that the present use of the water will not affect the amount of affluent [sic] either way. The fact that in the future the City might consider a different use for its affluent, [sic] I don't think is of any effect in this particular appeal. If they decided in the future they need more wells and condemn more water rights and the State Engineer could find that that would be a damage if they did that in the future to other rights, but at the present time and under the present testimony, the State here has held that the granting of the application will not impair or detrimentally impair any existing water rights, and Mr. McConvery has testified that the present use is not affected.

■ The State Engineer contends strongly that if the City is permitted to change the place or purpose of use of the sewage effluent, this increases the "actual usage" by the City beyond its 2,500 acre water right. We do not believe such a conclusion is warranted. The City has a right to use all of the 2,500 acre feet of water for municipal purposes. The fact that the City had previously used the water right in one part of the City and now desires to use that same right in other parts of the City does not detract from its right to use the entire amount. When determining the extent of a municipal water right, and the validity of any conditions attached thereto by the State Engineer, it is appropriate for the Court to look to a city's planned future use of water, *State, Etc. v. Rio Rancho Estates, Inc.,* 95 N.M. 560, 624 P.2d 502 (1981).

The original 2,500 acre feet water right was granted to the City in 1941 and 1942. The State Engineer and the Association aptly set out the origin of this right in its brief in chief as follows:

1. The water rights decreed to the City of Roswell in Chaves County Cause No. 20294 and 22600 Consolidated, for which application was made for supplemental rights and to change the place of use provide for the diversion of 2500 acre-feet of water as follows:

Purpose – Municipal use
State Engineer File Nos.: RA–2009, RA–2025
RA–2009 & RA–2025–Comb.–S.

Priority: November 12, 1941 for 1250 acre feet per annum February 11, 1942 for 1250 acre feet per annum

Location of Wells: RA–2009: Sec. 33, T. 11 S., R. 24 E., NE/4 SW/4

RA–2025: 1980 feet due north of the center of Sec. 33, T. 11 S., R. 25 E.

RA–2009 & RA–2025–Comb.—S: Sec. 32, T. 11 S., R. 24 E.: NW/4 SE/4

Source of Water: Artesian groundwater
Place of Use: Roswell Industrial Air Center
Amount of Water: Not to exceed a combined total diversion of 2500 acre feet per annum measured at the wells.

We have no quarrel with the State Engineer's statement that sewage effluent has been historically returned to the public surface or underground water of the state.

That principle is not applicable under the specific facts in this case.

Section 72–5–27, N.M.S.A. 1978, provides:

Artificial surface waters, as distinguished from natural surface waters, are hereby defined for the purpose of this act as waters whose appearance or accumulation is due to escape, seepage, loss, waste, drainage or percolation from constructed works, either directly or indirectly, and which depend for their continuance upon the acts of man. Such artificial waters are primarily private and subject to beneficial use by the owner or developer thereof; provided, that when such waters pass unused beyond the domain of the owner or developer and are deposited in a natural stream or watercourse and have not been applied to beneficial use by said owner or developer for a period of four years from the first appearance thereof, they shall be subject to appropriation and use; provided, that no appropriator can acquire a right, excepting by contract, grant, dedication or condemnation, as against the owner or developer compelling him to continue such water supply.

Treated sewage effluent is in the same category as water which has drained or seeped or percolated from a treatment plant which "depends for their continuance upon the acts of man." *See Reynolds v. Wiggins,* 74 N.M. 670, 397 P.2d 469 (1964); *Hagerman Irr. Co. v. E. Grand Plains D.D.,* 25 N.M. 649, 187 P. 555 (1920).

It is true as urged by the State Engineer that in *Vanderwork v. Hewes & Dean,* 15 N.M. 439, 110 P. 567 (1910) this Court limited the term "constructed works" as used in Section 72–5–27 to reservoirs or ditches. The result in that case is limited to the specific facts in that case.

■ The City readily acknowledges, and we agree, that once the effluent actually reaches a water course or underground reservoir, the City has lost control over the water and cannot recapture it. That is what the courts state in the cases relied upon by the State Engineer. *See Brantley v. Carlsbad Irr. Dist.,* 92 N.M. 280, 587 P.2d 427 (1978); *Kelley v. Carlsbad Irrigation*

*District*, 76 N.M. 466, 415 P.2d 849 (1966); *State v. King*, 63 N.M. 425, 321 P.2d 200 (1958); *Rio Grande Reservoir and Ditch Co. v. Wagon Wheel Gap Improvement Co.*, 68 Colo. 437, 191 P. 129 (1920).

We stress that the specific legal issues on appeal in this case do not concern the recapture of water which has escaped into and have become commingled with the natural public waters, whether surface or underground. The issue here is whether Roswell may take the sewage effluent before it is discharged as waste or drainage water and reuse it for municipal purposes. *Hagerman, supra,* and *Wiggins, supra.*

The right of an appropriator to reuse his waste waters has been explicitly recognized in other jurisdictions. *Rock Creek Ditch & Flume Co. v. Miller,* 93 Mont. 248, 17 P.2d 1074 (1933). *See also Thayer v. City of Rawlins,* 594 P.2d 95 (Wyo.1979); *Binning v. Miller,* 55 Wyo. 451, 102 P.2d 54 (1940). In *Bower v. Big Horn Canal Association,* 77 Wyo. 80, 101, 307 P.2d 593, 601 (1957), the court stated:

> No appropriator can compel any other appropriator to continue the waste of water which benefits the former. If the senior appropriator by a different method of irrigation can so utilize his water that it is all consumed in transpiration and consumptive use and no waste water returns by seepage or percolation to the river, no other appropriator can complain.

In *Metropolitan Denver Sewage v. Farmers Res. & I. Co.,* 179 Colo. 36, 499 P.2d 1190 (1972), the Colorado Supreme Court held that no appropriator has the right to rely on the same point of discharge or return of municipal sewage effluent. *Pulaski Irr. Ditch Co. v. City of Trinidad,* 70 Colo. 565, 203 P. 681 (1922). Section 72–5–24, N.M. S.A. 1978 confirmed this rule by stating that no point of diversion can be changed if it would be detrimental to existing rights. We recognize the correctness of that rule, but fail to see its applicability to the situation at bar. The City's attempt to change the location of its wells is not at issue in this appeal. Furthermore, the State Engineer, and the trial court independently, found that changing the place of use of the RIAC water will not impair the existing rights of others.

Although not necessary for arriving at the result in this case, we note from cases in other jurisdictions that our conclusion is supported by strong policy considerations. For example, in *Wyoming Hereford Ranch v. Hammond Packing Co.,* 33 Wyo. 14, 41, 236 P. 764, 772 (1925). The court there stated:

> It is well known that the disposition of sewage is one of the important problems that embarrass municipalities. In order to dispose of it without injury to others, a city may often be confronted with the necessity of choosing between several different plans, and in the selection of the plan to be followed we think it should be permitted to exercise a wide discretion. In determining how it will make a proper disposition of that which may be termed a potential nuisance, we think the city should not be hampered by a rule that would always require the sewage to be treated as waste or surplus waters. Sewage is something which the city has on its hands, and which must be disposed of in such a way that it will not cause damage to others. It would often be considered the height of efficiency if it could be disposed of in some other manner than by discharging it into a stream. Even in this state, where the conservation of water for irrigation is so important, we would not care to hold that in disposing of sewage the city could not adopt some means that would completely consume it.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

PAYNE, C.J., and SOSA, Senior Justice, concur.