2006-NMCA-009

126 P.3d 1177

**In the Matter of the Application by the Town of Silver City for Permit to Change Location of Well and Place and Purpose of Use of Groundwater in the Gila–San Francisco Underground Water Basin in New Mexico**

**TOWN OF SILVER CITY and ExxonMobil Corporation, Applicants/Appellees,**

**and**

**New Mexico Office of the State Engineer, Appellee,**

**v.**

**James E. Scartaccini, Protestant/Appellant.**

**No. 25,159.**

Court of Appeals of New Mexico.

Dec. 5, 2005.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Tim De Young, Albuquerque, for Appellees Town of Silver City and ExxonMobil Corporation.

Office of the State Engineer, DL Sanders, Special Assistant Attorney General, Jonathan E. Sperber, Special Assistant Attorney General, Santa Fe, for Appellee State Engineer.

William A. Walker, Jr., P.C., William A. Walker, Jr., Las Cruces, for Appellant.

## OPINION

SUTIN, J.

{1} This appeal arises out of objections to the issuance by the State Engineer of a permit to transfer water rights followed by an appeal to the district court by the objecting party that was dismissed for lack of standing.

## BACKGROUND

{2} In April 2000 ExxonMobil Corporation (Exxon) and the Town of Silver City, New Mexico (Town) filed a joint application (the Application) with the New Mexico State Engineer for a permit to transfer 574.71 acre feet per year (afy) of groundwater from Exxon's Pinos Altos mine site to the Town's Franks wellfield. The joint applicants (Exxon/Town) proposed changing the purpose of use from mining, milling, and related purposes to municipal, industrial, and domestic purposes. James E. Scartaccini protested. *See* NMSA 1978, § 72–12–3(D) (2001) (allowing objections to the granting of an application if it will impair the objector's water rights).

{3} An administrative hearing was held in September 2002 at which a hydrologist from the office of the State Engineer presented his groundwater or hydrologic flow model and analyses evaluating impairment of existing water rights. The Hearing Examiner found that "[g]ranting of the Application for an additional diversion of more than 102.72 afy would impair existing water rights." The State Engineer accepted and adopted the Hearing Examiner's report and recommendation in January 2003. In doing so, the State Engineer granted a permit to Exxon/Town for diversion and consumptive use of 102.72 afy at the Franks wellfield for municipal, industrial, and domestic purposes.

{4} Scartaccini appealed the determination of the State Engineer to the district court. *See* NMSA 1978, § 72–7–1(A) (1971) (providing for appeals to the district court

from a State Engineer determination). Exxon/Town and the State Engineer moved to dismiss the appeal for lack of standing. In December 2003, the district court granted the motion "as to any claimed impairment of [Scartaccini's] existing water rights outside of the hydrologic model boundary" and denied the motion as to Scartaccini's "claim of impairment based upon possible ownership of a portion of the water rights transferred by the action of the State Engineer in the proceeding below." The court then ordered Scartaccini to file a "complaint" that would address certain issues of fact and law. Scartaccini was to include legal descriptions of land with appurtenant water rights, how those water rights were or could have been put to beneficial use, the exact portion of those water rights Scartaccini claimed were transferred to Exxon's mine, and how Scartaccini concluded that the water being transferred to the Town included any of his claimed rights or impaired water rights he claimed.

{5} Scartaccini filed a "Complaint on Appeal From Ruling of State Engineer and Complaint for Declaratory Judgment." The relief he sought included (1) "declaring his ownership of the water rights in question, [and] for nominal and compensatory damages"; (2) "declaring that the granting of the Application ... would impair his water rights"; (3) "declaring that the attempted transfer of the water rights in question are [sic] contrary to the statutes and/or Constitution"; (4) "determining that the application ... did not fulfill the statutory requirements for such and [sic] application, and is therefore invalid"; (5) "determining that the transfer ... is contrary to the laws of the United States"; (6) "determining that the transfer of [certain] water rights ... was illegal"; and (7) "declaring that the use of his water rights would be impaired by the Application."

{6} The State Engineer and Exxon/Town answered the complaint and filed a second motion to dismiss Scartaccini's "appeal" for lack of standing. The court granted the motion, entering judgment against Scartaccini on the ground he lacked standing to pursue his claims. Scartaccini appeals from this judgment. *See* NMSA 1978, § 72–7–3 (1923) (providing for appeals from a decision of district court).[1] We affirm.

## DISCUSSION

### PRELIMINARY MATTERS–APPELLATE PROCEDURES

{7} This Court raised a procedural matter as to what appellate procedure we were to employ to review the decision of the district court. We asked the parties to address which appeal-related rule, Rule 12–201 NMRA (governing appeals as of right and requiring a notice of appeal), or Rule 12–505 NMRA (governing appeals from the district court to this Court after certain administrative proceedings and requiring a petition for writ of certiorari), is contemplated under Section 72–7–3. All parties conclude that appeals under Section 72–7–3 are governed by Rule 12–201 rather than Rule 12–505. We agree.

{8} In responding to this question, the State Engineer also discussed whether a de novo appeal from a State Engineer's decision could include a complaint seeking a declaratory judgment on an issue not resolved by the State Engineer, thereby invoking the district court's original jurisdiction and enlarging its appellate jurisdiction. In the present case, the district court provided Scartaccini with the opportunity to define the factual matters and questions that needed to be resolved "with regard to [his] claim of impairment based upon possible ownership of

---

1. Section 72–7–3 provides that "[t]he decision of the district court shall be binding on the state engineer" and that appeals taken from the decision of the district court "shall be governed by the provisions of Chapter 43 of the Session Laws of 1917." The Legislature "repealed practically all of the procedural provisions of Chapter 43, Laws 1917," which was commonly known as the Appellate Procedure Act, by Chapter 93, Laws 1927. *Ball v. United States Copper Co.*, 35 N.M. 637, 643, 6 P.2d 192, 195 (1931) (internal quotation marks and citation omitted); *Bybee v. White*, 34 N.M. 600, 601, 287 P. 290, 291 (1930) ("Rules of Appellate Procedure were adopted, effective March 1, 1928, superseding in many instances the statutes repealed."). The compiler of statutes has since determined that "Laws 1917, ch. 43, referred to in this section, is deemed superseded by the Rules of Appellate Procedure." § 72–7–3 (compiler's notes).

a portion of the water rights transferred by the action of the State Engineer." The State Engineer objects on appeal to Scartaccini also seeking a declaratory judgment that his use of his water rights would be impaired by the action of the State Engineer. The State Engineer contends that Scartaccini's complaint for a declaratory judgment was clearly outside the jurisdiction of the district court.

{9} To attack the State Engineer's decision, Scartaccini had to appeal to the district court under Section 72–7–1(A). That appeal is "de novo as cases originally docketed in the district court." N.M. Const. art. XVI, § 5; § 72–7–1(E).[2] The statute contemplates a new adjudication, allowing for "all amendments which may be necessary in furtherance of justice." § 72–7–1(E). Furthermore, if an appellant under Section 72–7–1 is able to state an independent claim for relief under Rule 1–008(A) NMRA, we do not see why he could not also pursue that claim under the court's original jurisdiction. *See Maso v. N.M. Taxation & Revenue Dep't,* 2004–NMCA–025, ¶ 17, 135 N.M. 152, 85 P.3d 276 (holding that "the district court can simultaneously exercise its appellate and original jurisdiction").

{10} By granting the Exxon/Town motion to dismiss for lack of standing as to all matters asserted in the complaint, the district court short circuited any de novo trial adjudication involving the merits of Scartaccini's appeal and avoided a trial of any independent claims Scartaccini may have intended to assert. While the district court's lack of standing ruling involved the merits of the affirmative defense and required consideration of facts alleged in the complaint as well as, and for the most part, facts outside those alleged in the complaint, Scartaccini does not appeal on the basis that the court improperly employed Rule 1–012(B)(6) NMRA or Rule

1–056 NMRA procedures or otherwise improperly or prematurely adjudicated or relied on facts. The only issue Scartaccini brings before this Court is whether the district court erred as a matter of law, under the facts presented, in determining he lacked standing to pursue the matters set out in his complaint.

## STANDARD OF REVIEW

{11} Interpretation of a statute and questions of law are reviewed de novo by an appellate court. *See Wegner v. Hair Prods. of Tex.,* 2005–NMCA–043, ¶ 7, 137 N.M. 328, 110 P.3d 544 ("Interpreting a statute is a question of law; therefore, our review is de novo."); *Hanson v. Turney,* 2004–NMCA–069, ¶ 7, 136 N.M. 1, 94 P.3d 1 (reviewing de novo an issue of statutory construction involving whether the holder of a permit owned a water right without having put the water to beneficial use). "The issue of standing generally involves a question of law that is reviewed de novo on appeal." *Santa Fe County Bd. of County Comm'rs v. Town of Edgewood,* 2004–NMCA–111, ¶ 4, 136 N.M. 301, 97 P.3d 633. "Whether a party has standing to litigate a particular issue is a question of law, which we review de novo." *City of Sunland Park v. Santa Teresa Servs. Co.,* 2003–NMCA–106, ¶ 39, 134 N.M. 243, 75 P.3d 843. Whether water rights were severed prior to a conveyance is an issue of law that is also reviewed de novo. *Turner v. Bassett,* 2005–NMSC–009, ¶ 9, 137 N.M. 381, 111 P.3d 701.

## SCARTACCINI'S ASSERTED BASES FOR STANDING

{12} Scartaccini claims standing pursuant to NMSA 1978, § 72–12–7(A)(1985) and Section 72–12–3(D). The pertinent part of Section 72–12–7(A), for this appeal, provides

---

**2.** The State Engineer points out Rule 1–074 NMRA generally governs appeals from administrative agencies to the district courts when there is a statutory right of appeal. The standard of review that is normally applied to administrative decisions is contained in Rule 1–074(Q). However, the constitutional and statutory provisions relating to water rights and the State Engineer require the appeal to be "de novo as cases originally docketed in the district court." N.M. Const. art. XVI, § 5; § 72–7–1(E). The State

Engineer states that he has "grappled with this situation by trying to force the applicability of Rule 1–074 to appeals of his decisions." After *Anthony Water & Sanitation Dist. v. Turney,* 2002–NMCA–095, ¶ 8, 132 N.M. 683, 54 P.3d 87, which discusses without deciding the issue, the State Engineer now attempts to use Rule 1–074 to guide, but not govern, the appeal structure before the district courts. We find it unnecessary in this appeal to grapple with the interplay between Rule 1–074 and Section 72–7–1.

that "[t]he owner of a water right may change the location of his well or change the use of the water, but only upon application to the state engineer and upon showing that the change will not impair existing rights." Section 72–12–3(D) provides that "[a]ny person . . . objecting that the granting of the application will impair the objector's water right shall have standing to file objections or protests."

{13} Scartaccini contends he has standing under Sections 72–12–7(A) and 72–12–3(D): (1) based on his ownership of a portion of the 102.72 afy that the State Engineer granted based on the Application; (2) by virtue of a potential impairment of his claimed right to use the water in a natural pond he owns that is located within the boundary of the hydrologic model; and (3) by virtue of a potential impairment of his claimed right to use vested water rights appurtenant to and used on parcels outside of the hydrologic model boundary, since, he claims, he has a right to transfer these rights to parcels owned by him located within the hydrologic model boundary. We hold that Scartaccini has no standing.

## NO STANDING EXISTS BASED ON ASSERTED OWNERSHIP OF RIGHTS COVERED BY PERMIT

{14} Scartaccini asserts in his brief in chief that he can show that, of the 574.71 afy sought in the Application, 337.86 afy were derived from lands that he had purchased from Exxon in 1997. He argues that because the 102.72 afy was nothing more than a undifferentiated portion of the 574.71 afy, he owns 58.8 percent of the diverted amount, mathematically determinable based on his claimed ownership of the 337.86 afy. Thus, according to Scartaccini, his water rights will be significantly impaired by the transfer of the 102.72 afy.

{15} The facts in this case demonstrate that through permits issued by the State Engineer in 1984, Exxon's appurtenant water rights were severed from the land in 1984, some thirteen years before Scartaccini purchased the land from Exxon in 1997. Scartaccini's brief in chief was filed on March 11, 2005. Our Supreme Court's decision in *Turner* regarding severance of appurtenant water rights, was entered four days earlier, March 7, 2005. 2005–NMSC–009, ¶ 28, 137 N.M. 381, 111 P.3d 701. The State Engineer asserts in his answer brief that *Turner* controls and precludes Scartaccini's claim to water rights. With respect to circumstances close to those in the present case, *Turner* states:

> [T]he issuance of a permit [gives] rise to a presumption that the land and water rights are no longer appurtenant. Without more, the conveyor of title to the land who has acquired a permit need not express in the conveyance documents that which is already presumed as a matter of law: the land passes without water.

*Id.* ¶ 24. In stating that the presumption can be overcome, *Turner* states:

> If the seller acts as if the land and water remain as one, if the seller creates reasonable expectations in the buyer contrary to the presumption of severance, then those water rights remain within the power of the court to order full relief to the parties . . . . We clarify, however, that a post-severance conveyance of land, even in the absence of reservation of rights, does not nullify a severance.

*Id.* ¶ 25. *Turner* states further that "a bright line rule that a severance is interrupted upon sale of underlying land makes little sense when a contract or tort claim does not arise." *Id.* ¶ 24.

{16} In his reply brief, Scartaccini agrees that *Turner* moots his point except, however, with respect to water rights he contends are associated with two specific tracts of land called the Harsh and Cofelt tracts. He concedes that he has no evidence to rebut the presumption as to tracts of land other than those two tracts. Relying on the rebuttable presumption, Scartaccini argues that the deeds to the Harsh and Cofelt tracts were specifically sold to him with "all water rights." More specifically, in transferring title, the Harsh deed includes "[a]ll buildings, improvements, water rights, privileges, easements, wells, ditches, pumps and appurtenances thereto belonging, including but not limited to all of Grantor's rights and easements in and to the Gila Farm Ditch." The

Cofelt deed includes "[a]ll water rights from the Gila River and all ditch rights, laterals and easements used in connection therewith."

{17} Arguing that the State Engineer's "somewhat dismissive[ ]" characterization of this deed language as a quitclaim lacks authority, Scartaccini argues that the language is sufficient under *Turner* with respect to the Harsh and Cofelt tracts to rebut the presumption that Exxon's water rights ceased to be appurtenant upon the issuance to Exxon of the permit by the State Engineer. Scartaccini claims that the burden shifted to the Town to establish by a preponderance of the evidence that there was, in fact, a severance of the water rights appurtenant to the two parcels at the time the permit was issued and that the severance was not nullified as a result of the sales to him transferring water rights.

{18} *Turner* indicates that an interrupted severance may be significant only when contract or tort issues are raised. 2005–NMSC–009, ¶ 17, 137 N.M. 381, 111 P.3d 701. The present case is not a contract or tort action. This appeal involves solely administrative proceedings before the State Engineer with none of the contract or tort considerations discussed in *Turner*. The *Turner* presumption does not even come into play. Under *Turner,* insofar as the permit proceedings are concerned, the earlier severance stands. *See id.* ¶ 25. There exists no issue whether a later buyer can obtain contract or tort relief to obtain water rights the claimant contends were transferred by deed. Where the proceedings are purely an administrative objection to issuance of a permit, "a post-severance conveyance of land, even in the absence of a reservation of rights, does not nullify a severance," *id.,* and the objector cannot successfully maintain he owns water rights or attempt to establish his ownership by attempting to prove he falls within the exceptions to the *Turner* presumption.

## NO STANDING EXISTS BASED ON OWNERSHIP OF THE POND

{19} Scartaccini asserted in the district court proceedings that he owned a natural, approximate five-acre private pond situated within the hydrologic model boundary. He alleged in his complaint that the pond varied in size and depth depending upon subsurface and surface water conditions. He further alleged that the water in the pond and the right to use the water "belong to" him. In addition, Scartaccini asserted that he held a license to operate a fish hatchery and that he was entitled to use the water from the pond in connection with the operation of a hatchery.

{20} Scartaccini presents various arguments to persuade this Court that under New Mexico case law he has a "water right" under Section 72–12–3(D) as to the pond water that was potentially impaired by the granting of the Application. He argues that the pond water in question is not subject to appropriation under the New Mexico Constitution or statutes but belongs to him as the owner of the land on which the pond is situated and as the owner of a "right" conferred by case law. He further argues that he has a right to use the water from his pond to operate a hatchery. According to Scartaccini, a "potential" impairment of water rights gives him standing.

{21} Scartaccini relies on three New Mexico cases to support his case-law-created water right. *See Burgett v. Calentine,* 56 N.M. 194, 196, 242 P.2d 276, 276–77 (1951) (holding that the law appropriating water did not apply to small springs that had no well-defined channel through which the water could flow and that did not rise to the surface and thereafter flow into a stream); *Harkey v. Smith,* 31 N.M. 521, 526, 247 P. 550, 552 (1926) (stating that "the right to use water, either as to volume or periods of use, is regulated either by the permit of the state engineer, or the decrees of the courts"); *Vanderwork v. Hewes,* 15 N.M. 439, 447–49, 110 P. 567, 569–70 (1910) (holding that a small body of water percolating to the surface, forming a small basin, coming from neither a stream nor water course, but from an unknown source, was not under the jurisdiction of the territorial engineer). These cases, according to Scartaccini, support his contentions that a land owner has a right to use pond water on his land as he chooses, that this right is a court-established water right, no different than a water right granted

by permit, and that the State Engineer does not have authority even to grant a permit to use the pond water.

{22} Based on the premise of a court-declared water right and lack of State Engineer authority, Scartaccini argues that he has standing based on Sections 72–12–3(D) and –7(A) since he need only show that he has "existing rights," with Exxon/Town then having the burden to prove that the grant of the Application will not impair those existing rights. *See City of Roswell v. Reynolds,* 86 N.M. 249, 254, 522 P.2d 796, 801 (1974) (holding on appeal from a state engineer's grant of an application to change the points of appropriation for certain water, that the district court had a duty to deny the application once the court determined the applicant "had failed to prove there would be no impairment to existing rights"); *Montgomery v. N.M. State Eng'r,* 2005–NMCA–071, ¶ 20, 137 N.M. 659, 114 P.3d 339, *cert. granted,* 2005–NMCERT–006, 137 N.M. 767, 115 P.3d 230; *Herrington v. State ex rel. Office of State Eng'r,* 2004–NMCA–062, ¶ 26, 135 N.M. 585, 92 P.3d 31, *cert. granted,* 2004–NMCERT–005, 135 N.M. 565, 92 P.3d 11.

{23} Taking issue with Scartaccini's arguments, the State Engineer asserts that the water in question is public water and that Scartaccini has no water right. The State Engineer shows that Scartaccini's reliance on *Harkey* is misplaced because Scartaccini was unable to show that a court has entered a decree adjudicating his water rights in the pond. Ignoring *Burgett* and *Vanderwork* altogether, the State Engineer primarily argues that: (1) a water right may only arise in relation to public water and through the permit process, citing *Hanson,* 2004–NMCA–069, ¶¶ 8–11, 136 N.M. 1, 94 P.3d 1, in which this Court addressed Section 72–12–7(A), and explored the nature of and process required to obtain a water right; and (2) the pond is within the State Engineer's jurisdiction and is by definition public water, Scartaccini must therefore obtain a permit from the State Engineer in order to establish a water right, and public water is not subject to private ownership. Further, according to the State Engineer, use of private water cannot establish a right to appropriate public water. *See*

*In re Applications of Langenegger,* 64 N.M. 218, 222–23, 326 P.2d 1098, 1101 (1958) (determining that the use of private drainage waters for irrigation could not be made the basis of a right to appropriate public water).

{24} Thus, the State Engineer argues, Scartaccini has no water right because he failed to apply for a permit to put public water to beneficial use, he does not have a permit, and he has not put the water to beneficial use. As to beneficial use, the State Engineer argues that, even if a fish hatchery operation constituted such use, Scartaccini did not show it was in operation at the time of his protest and he could not establish a water right based on a hypothetical situation. *See Montgomery,* 2005–NMCA–071, ¶ 25, 137 N.M. 659, 114 P.3d 339 (stating "[t]he concept of beneficial use requires actual use for some purpose that is socially accepted as beneficial," and that "[a]n intended future use is not sufficient to establish beneficial use if the water is not put to actual use within a reasonable span of time" (internal quotation marks and citations omitted)).

{25} Exxon/Town also presents several arguments in opposition to Scartaccini's contentions. Exxon/Town essentially argues that the pond is public water because it is covered in the surface and groundwater sections in the statutes which state that all natural waters flowing in streams and watercourses and all groundwater within declared groundwater basins belong to the public and are subject to appropriation for beneficial use and require, for appropriation, a permit from the State Engineer. *See* NMSA 1978, § 72–1–1 (1941) (natural waters; public); NMSA 1978, § 72–12–1 (2003) (underground waters); NMSA 1978, § 72–5–1 (1941) (permit requirement).

{26} Exxon/Town further argues that the territorial decision of *Vanderwork* is out of date and was severely limited to its facts by *Reynolds v. City of Roswell,* 99 N.M. 84, 87, 654 P.2d 537, 540 (1982), which states that the result in *Vanderwork* was "limited to the specific facts in that case," in agreeing with the State Engineer that *Vanderwork* limited the term "constructed works" as used in NMSA 1978, § 72–5–27 (1941), to reservoirs or ditches. *Cf. Cavender v. Phillips,* 41 N.M.

235, 237, 67 P.2d 250, 251 (1937) (holding, where appellant relied almost exclusively on a decision of the territorial supreme court, the decision was not binding precedent and the reasoning had been rendered inapplicable because of subsequent statutory changes). Exxon/Town thus argues that Scartaccini cannot rely on *Vanderwork* and start from the premise that the right to use the water in the pond is a water right that can be impaired as contemplated under Section 72–12–3(D). Exxon/Town asserts that Scartaccini misuses *Vanderwork* when claiming there exists no authority for the view that his right is not a water right. Rather, Exxon/Town argues "the shoe is on the other foot because there is no authority for the proposition that [the right asserted by Scartaccini] is a water right under New Mexico law." In that regard, Exxon/Town implies that *Burgett* does not assist Scartaccini, even were it to be assumed that *Vanderwork* supplied some underlying basis for Scartaccini's theory. *Vanderwork,* Exxon/Town argues, provides no basis on which to assert ownership of a water right. Because the water in question is not public water under Scartaccini's theory, the water is not subject to appropriation for beneficial use.

■ {27} The State Engineer and Exxon/Town are on the right track. We are unpersuaded by Scartaccini's attempt to create a water right subject to impairment and giving standing under Section 72–12–3(D) to object to the Application. The term "water right" in Section 72–12–3(D) in the context of a protest, the term "rights" in the context of applications for use of water under Section 72–12–1, and the term "right" in NMSA 1978, § 72–12–2 (1931), in regard to beneficial use, exist within a statutory regulatory and administrative scheme involving the use of public water and the necessity for a permit for such use. Nowhere in Chapter 72, Article 12 is there any indication that a "water right" subject to impairment and which provides standing to protest another's application for a permit arises from the mere existence of a pond on private property. Scartaccini has not shown, and indeed, cannot show how the mere existence of the pond water, whether public or private, creates for him a water right that will be impaired if the

Application is granted. He has not shown an appropriation for beneficial use or a permit in connection with the pond water. Nor has he shown how, even were the pond to belong to him under a *Vanderwork* theory, he has obtained an assertable water right under the statutes that can be impaired, or even, as Scartaccini asserts, potentially impaired by the grant of an application for a permit in regard to purely public underground water. It is inconsistent to assert that the pond water has an unknown groundwater source, yet assert that the private "water right" in those pond waters is somehow potentially impaired by the appropriation of groundwater that, by statute, is public water.

■ {28} We acknowledge that *Vanderwork* has not been overruled, but *Vanderwork's* conclusions in no way require Scartaccini's result. We cannot accept *Vanderwork* or *Burgett* as precedent automatically establishing a water right assertable under the statutes as being impaired when others are granted an application for a permit to appropriate underground water located within a common hydrologic model boundary. As Exxon/Town noted, *Reynolds* limited *Vanderwork* to its facts. *See also Yeo v. Tweedy,* 34 N.M. 611, 624, 286 P. 970, 975–76 (1929) (stating that *Vanderwork* determined that seepage water in question, which was from an unknown source, did not come within the rules of law pertaining to surface and subterranean streams that covered "the disposition of percolating water from large areas of land saturated with artesian water" (internal quotation marks and citation omitted)). *Vanderwork* has not been advanced in any appellate case in New Mexico since *Burgett* in 1952 in regard to its holding indicating that seepage from an unknown source may not be public water. No New Mexico case has interpreted or extended *Vanderwork* to accommodate Scartaccini's theory. The short string of cases relying on *Vanderwork's* holding relating to the State Engineer's jurisdiction were decided on different factual questions and the line ceased in 1937 with *New Mexico Products Co. v. New Mexico Power Co.,* 42 N.M. 311, 77 P.2d 634 (1937). Nor is the 1920

case of *Hagerman Irrigation Co. v. East Grand Plains Drainage District,* 25 N.M. 649, 187 P. 555 (1920), which cites *Vanderwork* in relation to a system of drainage to reclaim lands that was constructed by a drainage ditch corporation established under statute and that carried water into an artificial canal constructed by an irrigation company, of any assistance to Scartaccini for precedential value. Moreover, without the benefit of any showing of modern science, we question whether *Vanderwork*'s premise that lack of proof of the source automatically means the water is private is acceptable today. Unless shown otherwise by the person claiming some sort of a private right, we will presume that the source of pond water, if no surface source is shown, is underground water that is shared by other members of the public within the hydrologic model boundary. *See McBee v. Reynolds,* 74 N.M. 783, 787–88, 399 P.2d 110, 113–14 (1965) ("Since *Yeo v. Tweedy,* 34 N.M. 611, 286 P. 970, it has been settled in this state that waters of underground streams, channels, artesian basins, reservoirs and lakes, the boundaries of which may be reasonably ascertained, are public and subject to appropriation for beneficial use. They are included within the term 'water' as used in Art. XVI, §§ 1–3, of our Constitution.").

{29} We emphasize, however, that whether the pond water is from a public source, as the State Engineer contends, or is privately-owned water arguably from an unknown source, as Scartaccini contends, is of no significance in this case. If the pond water is public, Scartaccini has no water right because he did not obtain a permit to appropriate the water for beneficial use. If the pond water can be said to be private, any "right" Scartaccini has is not a "water right" subject to impairment under the statutes. The statutes contemplate anyone who protests to have a "water right" obtained pursuant to statute. To the extent Scartaccini has any sort of private water right, he does not have a water right contemplated in the statutes as subject to impairment, and the right he claims is not one he has standing to assert in a statutory protest.

**NO STANDING EXISTS BASED ON OWNERSHIP OF WATER RIGHTS RELATING TO LANDS OUTSIDE THE HYDROLOGIC MODEL BOUNDARY HYPOTHETICALLY TRANSFERRABLE TO PROPERTY OWNED WITHIN THE HYDROLOGIC MODEL BOUNDARY**

{30} Scartaccini discusses his ownership of and the raising of cattle on lands in the basin as to which Exxon's water rights once existed. He states further that he owns adjudicated water rights within that basin appurtenant to and used in connection with basin lands other than those he purchased from Exxon. These lands are outside of the hydrologic model boundary. He asserts he has a right to move water rights from one parcel to another within the basin, and has actually done so, relying on the same statute pursuant to which Exxon/Town is changing the location of use of water rights. He argues that he has standing pursuant to Sections 72–12–3 and –7 because granting the Application might negatively affect his right to make use of the water rights he has "in the manner he deems fit," including transferring the water rights from a parcel outside the hydrologic model boundary to one he owns within that boundary, and thereby impair his water rights.

{31} The district court ruled in its first dismissal order that Scartaccini lacked standing to claim impairment of existing water rights outside the hydrologic model boundary. We agree with that ruling. We fail to see how Scartaccini falls within any zone of interest to make the claims he makes. *See City of Sunland Park,* 2003–NMCA–106, ¶¶ 40–41, 134 N.M. 243, 75 P.3d 843 (holding that "[an] injury ... is not enough by itself to confer standing"; the interest the complainant seeks to protect must also be "within the 'zone of interests' protected ... by the statute" the complainant is relying on); *see also John Does v. Roman Catholic Church of the Archdiocese of Santa Fe, Inc.,* 1996–NMCA–094, ¶ 25, 122 N.M. 307, 924 P.2d 273 ("The requirements for standing derive from constitutional provisions, enacted statutes and rules, and prudential considerations."). Impairment, if any, to Scartaccini's right or ability to transfer water rights as he sug-

gests is an allegation of a purely hypothetical injury arising to a level no greater than speculation. *See N.M. Indus. Energy Consumers v. N.M. Pub. Serv. Comm'n*, 111 N.M. 622, 629–30, 808 P.2d 592, 599–600 (1991) ("The basic purpose of ripeness law is and always has been to conserve judicial machinery for problems which are real and present or imminent, not to squander it on abstract or hypothetical or remote problems." (internal quotation marks and citation omitted)).

**CONCLUSION**

{32}  We affirm the district court's determination that Scartaccini lacks standing to protest the Exxon/Town Application to the State Engineer for a permit to transfer groundwater.

{33}  **IT IS SO ORDERED.**

ALARID and KENNEDY, JJ., concur.