(No. 2334.   Jan. 26, 1920.)

## HAGERMAN IRR. CO. v. EAST GRAND PLAINS DRAINAGE DIST.

### SYLLABUS BY THE COURT

1.   Artificial waters are not subject to appropriation under the statutes of this state.          P. 653

2.   Natural waters flowing in streams and water courses are subject to appropriation.   The creator of an artificial flow of water is the owner of the water so long as it is confined to his property, but when such artificial waters are deposited into a natural stream, and the creator of the flow has lost his dominion over the same, such waters become a part of the waters of the stream, and are subject to appropriation and use; but it is only after such waters reach the stream that they are subject to appropriation and use, and the appropriator or user of such waters can acquire no right as against the creator of the flow to require him to continue supplying such waters to the stream.                                    P. 656

3.   Where a drainage district, organized under the statutes of this state, constructs a drainage system, and the drainage ditch flows into an irrigation canal, no right on the part of the irrigation canal exists to require a continuation of such bow of water.                                              P. 656

Appeal from District Court, Chaves County; McClure, Judge.

Suit by the Hagerman Irrigation Company against the East Grand Plains Drainage District to enjoin a diversion of water.   Decree for defendant, and plaintiff appeals.   Affirmed.

L. O. FULLEN and W. A. DUNN, both of Roswell, for appellant.

R. D. BOWERS, of Roswell, for appellee.

OPINION OF THE COURT

ROBERTS, J.   The appellee is a drainage ditch organized under the provision of chapter 31, Code 1915. This chapter provides for the organization of such a ditch by the adult owners of land within any district of land, and such drainage ditch, when formed as required by law, is managed by three commissioners appointed by the judge of the district court.   Such drainage ditch is made a corporation, and given power to sue and be sued.   The appellee herein was organized by the landowners of the East Grand Plains neighborhood in Chaves county for the purpose of draining the lands

owned· by certain individuals within the limits of the district. The district in question was organized in 1915, and began the construction of a system ·of drainage to reclaim the lands within the limits of the district. The drains were constructed of tile laid beneath the surface of the earth. In constructing the system the excavation and laying of tile were begun on the canal of the Hagerman Irrigation Company. This was an artificial canal, constructed by the appellant many years ago, prior to the formation of the drainage ditch, and the canal company was engaged in supplying water, to consumers living below the outlet of the drainage ditch, for compensation. Water from the drainage ditch began flowing into the canal as soon as it had been constructed for a sufficient length to afford any drainage, but the laterals and feeders for the main drain were not all completed until February, 1918. When the drainage system was completed there were from four to ten second feet of water flowing from the drainage ditch into appellant's canal. In the year 1917 there were at times as much as ten second feet of water flowing into appellant's canal from the drainage ditch, and in that year a contract was made between the canal company and the drainage commissioners, by which the water was leased to the canal company for one year, for the sum of $350. Early in the year 1918 the drainage commissioners conceived the idea of carrying the water developed by the drainage system across the canal of the appellant, and intended to sell water to other parties beyond the canal of the appellant. The drainage commissioners attempted to purchase a right of way across appellant's canal for the purpose of building a flume to carry the water. The canal company refused to sell a right of way, and a condemnation suit was instituted, and commissioners were appointed by the district court to appraise the damage to appellant.

Thereafter, and before the commissioners had reported, appellant instituted this suit in the district court of

Chaves county for the purpose of enjoining appellee from diverting the water which had been flowing into the canal from appellee's drain ditch. The complaint asked the relief upon two theories. (1) That it had acquired a right to the water by appropriation; (2) that it had acquired a right to the use of the water by prescription. Upon the trial the claim to the water, by prescription, was abondoned, and reliance was placed only upon the alleged appropriation of the water.

An answer was filed by appellee, admitting that it intended to carry the water beyond appellant's canal and sell the same, but set up that appellant owned no interest or right whatever in and to the waters developed by the drainage ditch, and denied that it had made a valid appropriation of the same. The court, after hearing the evidence, made findings of fact and stated conclusions of law, upon which judgment was entered for appellee, from which this appeal is prosecuted.

Appellant argues ten propositions upon which it relies for a reversal, but the decisive question in the case is as to whether or not appellant had made a valid appropriation of the waters flowing into its canal from the drain of appellee.

We do not regard the question as to the disposition which appellee intended to make of the waters as of any importance. If appellant did not have, as against the appellee, a right to the continuous receipt and use of the water in question, it would have no standing in a court of equity. Consequently the question to be determined is, Did the appellant acquire a right to the use of this water as against the creator of the artificial flow? In passing, it is proper to say that a different question would be involved should a contest arise between two parties as to the right to the use of water created by an artificial flow, neither of such parties being the creator of such flow.

[1] That artificial waters are not subject to appropriation under the statutes of this state is demonstrated by a quotation of section 5654, Code 1915, defining what waters are subject to appropriation. This section reads as follows:

"All natural waters flowing in streams and water courses, whether such be perennial, or torrential, within the limits of the state of New Mexico, belong to the public and are subject to appropriation for beneficial use."

Likewise under the Constitution of the state (section 2, article 16) only the unappropriated water of every natural stream is subject to appropriation.

The question then arises as to whether such waters were subject to appropriation at common law, or in the absence of statute. In Kinney on Irrigation and Water Rights, vol. 2, § 1043, the author says:

"No prescriptive right can be acquired as against mere waste waters. In fact no right can be acquired to have the discharge of waste water continued either by appropriation, prescription, or estoppel regardless of the time such waste water has been used by those claiming the right."

In Wiel on Water Rights in the Western States, vol. 1, §56, the author says:

"While artificial flow claimants may thus have priority between themselves, they can have no right of continuance against the owner of the natural supply, except by grant, condemnation or dedication."

And in section 57 the same author says:

"No action, therefore, will lie for an injury by the. diversion of an artificial water course where from the nature of the case it is obvious that the enjoyment of it depends upon temporary circumstances, and is not of a permanent character."

In the case of Wood v. Waud, 3 Exchequer, 746, the court said:

"We entirely concur with Lord Denman, C. J., that 'the proposition that a water course, of whatever antiquity, and in whatever degree enjoyed by numerous persons, cannot be

enjoyed so as to confer a right to the use of the water, if proved to have been orginally artificial, is quite indefensible,' but, on the other hand, the general proposition that, under all circumstances the right to water courses, arising from enjoyment, is the same whether they be natural or artificial cannot possibly be sustained. The right to artificial water courses, as against the party creating them, surely must depend upon the character of the water course, whether it be of a permanent or temporary nature, and upon the circumstances under which it is created. The enjoyment for 20 years of a stream diverted or penned up by permanent embankments clearly stands upon a different footing from the enjoyment of a flow of water originating in the mode of occupation or alteration of a person's property and presumably of a temporary character, and liable to variation.

"The flow of water for 20 years from the eaves of a house could not give a right to the neighbor to insist that the house should not be pulled down or altered, so as to diminish the quantity of water flowing from the roof. The flow of water from a drain, for the purposes of agricultural improvements, for 20 years, could not give a right to the neighbor so as to preclude the proprietor from altering the level of his drains for the greater improvement of the land. The state of circumstances in such cases shows that one party never intended to give, nor the other enjoy, the use of the stream as a matter of right. If, then, this had been a question between the plaintiffs and the colliery owners, it seems to us that the plaintiffs could not have maintained an action for omitting to pump water by machinery (and in this the Court of Queen's Bench and Exchequer entirely agree in the case above cited). Nor, if the colliery proprietors had chosen to pump out the water from the pit, from whence the stream flowed continuously, and caused what is termed the natural flow to cease, could the plaintiffs, in our opinion, have sued them for so doing."

In the case of Arkwright v. Gell, 5 Meeson & Welsby, 202, the court had before it for consideration rights to the use of an artificial flow of water created by the drainage of a mine. The flow had been kept up and continued for many years, and the court held that one using the water, although for a period of more than 20 years, acquired no right as against the creator of the flow; that the flow could be discontinued at any time by the owners of the mine. In the case of Gaved v. Martyn, 19 C. B. (N. S.) 732, Eng. Rep. Reprint, vol. 144, p. 974, the court said:

"Rights and liabilities in respect of artificial streams when first flowing on the surface are entirely distinct from rights

and liabilities in respect of natural streams so flowing. The water in an artificial stream flowing in the land of the party by whom it is caused to flow is the property of that party, and is not subject to any rights or liabilities in respect of other persons. If the stream so brought to the surface is made to flow upon the land of a neighbour without his consent, it is a wrong for which the party causing it so to flow is liable. If there is a grant by the neighbour, the terms of the grant regulate the rights and liabilities of the parties thereto. If there is uninterrupted user of the land of the neighbour for receiving the flow as of right for 20 years, such user is evidence that the land from which the water is sent into the neighbour's land has become the dominant tenement, having a right to the easement of so sending the water, and that the neighbour's land has become subject to the easement of receiving that water. But such user of the easement of sending on the water of an artificial stream is of itself alone no evidence that the land from which the water is sent has become subject to the servitude of being bound to send on the water to the land of the neighbour below. The enjoyment of the easement is of itself no evidence that the party enjoying it has become subject to the servitude of being bound to exercise the easement for the benefit of the neighbour. A right of way is no evidence that the party entitled thereto is under a duty to walk; nor a right to eavesdropping on the neighbour's land, that the party is bound to send on his rainwater to that land. In like manner, we consider that a party by the mere exercise of a right to make an artificial drain into his neighbour's land, either from mine or surface, does not raise any presumption that he is subject to any duty to continue his artificial drain, by 20 years' user, although there may be additional circumstances by which that presumption would be raised or the right proved. Also, if it be proved that the stream was originally intended to have a permanent flow, or if the party by whom or on whose behalf the artificial stream was caused to flow is shown to have abandoned permanently without intention to resume the works by which the flow was caused, and given up all right to and control over the stream, such stream may become subject to the laws relating to natural streams. But the facts here do not raise either of these points.

"The laws relating to natural streams are entirely different. The flow of a natural stream creates natural rights and liabilities between all the riparian proprietors along the whole of its course. Subject to reasonable use by himself, each proprietor is bound to allow the water to flow on without altering the quantity or quality. These natural rights and liabilities may be altered by grant or by user of an easement to alter the stream, as by diverting, or fouling, or penning back, or the like. If the stream flows at its source by the operation of nature, that is, if it is a natural stream, the rights and liabilities of the party owning the land at its source are the same as those of the proprietors in the course below. If the stream flows at its course by the operation of man, that is, if

it is an artificial stream, the owner of the land at its source
or the commencement of the flow is not subject to any rights
or liabilities towards any other person in respect of the water
of that stream. The owner of such land may make himself
liable to duties in respect of such water, by grant or contract;
but the party claiming a right to compel performance of those
duties must give evidence of such rights, beyond the mere
suffering by him of the servitude of receiving such water."

In the case of Cardelli v. Comstock Tunnel Co., 26
Nev. 284, 66 Pac. 950, the court held that where all the
waters flowing through a tunnel are derived from drain-
age of a mine and of the country between the mine
and the mouth of the tunnel and from pumpings into
the tunnels from lower levels, such tunnel is not a natural
stream, and its waters are not subject to appropriation.

The same holding was announced in the case of Cres-
cent Mining Co. v. Silver King Mining Co., 17 Utah, 444,
54 Pac. 244, 70 Am. St. Rep. 810. See, also, Fairplay
Hyd. M. Co. v. Weston, 29 Colo. 125, 67 Pac. 160, and
Vanderwork v. Hewes & Dean, 15 N. M. 439, 110 Pac.
567.

[2, 3] From the authorities cited it will be seen that
only natural waters flowing in streams and water courses
are subject to appropriation; that the creator of an artifi-
cial flow of water is the owner of the water so long as
it is confined to his property, but that when such artifi-
cial waters are deposited in a natural stream and the
creator of the flow has lost his domain over the same,
such waters become a part of the waters of the stream,
and are subject to appropriation and use, but it is only
after such waters reach the stream that they are subject
to appropriation and use, and the appropriator or user
of such waters can acquire no right as against the creator
of the flow to require him to continue supplying such
waters to the stream. There is a possible exception to
this statement, where it appears that the artificial flow
is created by an agency which is of a permanent nature
and the creator of the flow has abandoned all claim to

the use of the water, but such question is not presented for decision by this case. Here the drainage system was installed for the purpose of getting rid of waste water on the lands of the parties creating the drainage ditch. It would necessarily be maintained only so long as such drainage was necessary and the parties creating the drainage system desired to continue utilizing the same. By its creation and the development of the artificial water, and the taking and using of the same by the irrigation company, no duty is imposed upon the creators of the ditch to continue to supply the water. In other words, they do not become bound to keep up the drainage system, nor are they obligated to discharge the water into appellant's canal. It is conceded by appellant, that if the landowners upon which the artificial flow is developed desire to utilize the water, as against them it would have no right, but it does not insist that the drainage ditch, the corporate entity under the statute, has no power to sell water, and the fact that it desires to carry water beyond its line for the purpose of selling it to other parties gives it a right to prevent the carrying of the drainage ditch further. The statute gives to the drainage commissioners the power to lay out the drains and to secure outlets from the same. It alleges in its answer that it desires to carry the drainage ditch beyond the appellant's canal, and sets up the lack of appellant's interest in the disposition which it sees fit to make of the water. Unless appellant owns the water or a right to the use of the same, as we have stated, it is not concerned with the disposition which the drainage commissioners may see fit to make of the same; and, as it has no right as against the drainage district, the creator of the flow, to the use of the water, prior to its discharge into its canal, and has no right to a continuation of the discharge, the court properly refused to grant the injunction.

There is some discussion in the brief as to the effect of the contract referred to, made in 1917, and also as to

the use by appellant of certain waters theretofore flowing in open ditches, constructed for the purpose of drainage of part of the lands now embraced in the drainage district in question, but these questions are of no importance.

For the reasons stated, the judgment will be affirmed; and it is so ordered.

PARKER, C. J., and RAYNOLDS, J., concur.