# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:** _____

**Filing Date:   September 22, 2016**

**NO. S-1-SC-35446**

**STATE ENGINEER OF NEW MEXICO,**

   Plaintiff-Respondent,

v.

**DIAMOND K BAR RANCH, LLC, and**
**RAYMOND L. KYSAR, JR. and PATSY SUE KYSAR,**
**In their capacity as Trustees of THE RAYMOND L. AND**
**PATSY SUE KYSAR, JR. LIVING TRUST,**

   Defendants-Petitioners.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Daylene A. Marsh, District Judge**

Victor R. Marshall & Associates, P.C.
Victor Riton Marshall
Albuquerque, NM

for Petitioners

Office of the State Engineer
Gregory C. Ridgley, Special Assistant Attorney General
L. Christopher Lindeen, Special Assistant Attorney General
Santa Fe, NM

Abramowitz, Franks & Olsen
Brett Justin Olsen, Special Assistant Attorney General
Fort Collins, CO

for Respondent

**OPINION**

**DANIELS, Chief Justice.**

{1}     Water is both a scarce and a vital resource in New Mexico, and its responsible management is crucially important to all New Mexicans. In this appeal, we address the scope of the New Mexico State Engineer's regulatory authority over use of surface water in New Mexico when it has been diverted from the Animas River into an acequia in Colorado and accessed from that ditch by Petitioners and others in New Mexico.

{2}     We reject Petitioners' arguments that the State Engineer lacks statutory authority over waters initially diverted outside of New Mexico and has no jurisdiction to enjoin Petitioners from irrigating an area of farmland not subject to an existing adjudicated water right or a permit from the State Engineer. We hold that the State Engineer is authorized by New Mexico law to require a permit for new, expanded, or modified use of this water and to enjoin any unlawful diversion.

**I.     FACTS AND PROCEDURAL BACKGROUND**

{3}     The Animas River, running south from Colorado into New Mexico, is a tributary of the San Juan River and part of the larger Colorado River system. In *Echo Ditch Co. v. McDermott Ditch Company*, No. 01690 (1948), the First Judicial District Court of New Mexico adjudicated water rights for the San Juan River and its

tributaries in New Mexico, resulting in what is known as the Echo Ditch Decree. Among the rights adjudicated were those rights to water for irrigation from the Ralston Ditch. The Ralston Ditch diverts water from the Animas River at a headgate located in Colorado approximately one and one-half miles north of the New Mexico border.

{4}     As recognized by the decree, the Ralston Ditch delivers Animas River surface water to irrigate 364.2 acres of land in New Mexico. The decree details the allowable purposes of water use. For each property owner with an adjudicated water right, the decree also specifies the allowable quantity of annual water use and notes that "the right to use of said water shall be confined to use upon the lands described" on the individual ownership forms. The Echo Ditch Decree gives the State Engineer, as statutory water master, exclusive authority to measure waters delivered from a main diversion or distributing system, to monitor waste, and to ensure water is delivered in "the respective quantities which the lands and said water users are entitled to receive."

{5}     Petitioner Diamond K Bar Ranch, LLC (Diamond K), an asset of the Raymond L. and Patsy Sue Kysar, Jr. Living Trust, and trustees Raymond L. Kysar, Jr. and Patsy Sue Kysar (collectively Petitioners), own and operate a farm in San Juan

2

County, New Mexico. The Diamond K farm property includes a large portion of the 364.2 acres of land and its appurtenant water rights for the Ralston Ditch adjudicated in the Echo Ditch Decree.

{6}     The State Engineer filed a three-count complaint against Petitioners pertaining to their alleged illegal use of Animas River surface water. In the second count, the only count currently before this Court, the State Engineer sought to enjoin Petitioners' illegal use of Animas River surface water to irrigate additional acreage that was not part of the adjudicated acreage under the Echo Ditch Decree and for which Petitioners have no permit. *See* NMSA 1978, § 72-5-39 (1965) ("The [S]tate [E]ngineer may apply for and obtain an injunction in the district court of any county in which water is being diverted or the land affected is located, against any person, firm or corporation who shall divert water . . . in violation of statute, or who shall cause or permit the application of said water upon lands or to purposes for which no valid water right exists.").

{7}     Petitioners filed a motion to dismiss all three counts against them, primarily relying on *Turley v. Furman*, 1911-NMSC-030, 16 N.M. 253, 114 P. 278, to support their contention that the State Engineer lacks the authority to regulate the use of surface water from the Animas River for irrigation purposes when that water is

diverted in Colorado and transported into New Mexico by the Ralston Ditch.

{8}    Petitioners further argued that Article XVI, Section 2 of the New Mexico Constitution limits the State Engineer's regulatory authority over unappropriated "natural waters" flowing within New Mexico's boundaries and that any attempt by the State Engineer to exert jurisdiction over waters diverted from the Animas River in Colorado, which are appropriated and brought through a "constructed" ditch for beneficial use in New Mexico, violates Colorado's right to regulate diversions in its state.

{9}    Finally, Petitioners argued that the Ralston Ditch, as a community ditch constructed in the 1880s, is exempt from the permit requirements of NMSA 1978, Section 72-5-1 (1941) as stated in NMSA 1978, Section 72-5-2 (1913). *See* § 72-5-1 (requiring application to the State Engineer for a permit to appropriate water); § 72-5-2 ("None of the provisions of the preceding [S]ection [72-5-1] . . . shall apply to community ditches which are already constructed.").

{10}    The Eleventh Judicial District Court denied the motion to dismiss, concluding that "the State Engineer has legal jurisdiction to enforce the [Petitioners'] adjudicated water right on the Ralston Ditch notwithstanding the Ditch's diversion point within . . . Colorado." The district court reasoned that *Turley* was inapplicable to the facts

4

of this case, stating that if there was ever a question whether *Turley* had any application to preclude the State Engineer's authority on the Ralston Ditch, the issue was resolved by the 1948 Upper Colorado River Basin Compact codified at NMSA 1978, Section 72-15-26 (1949); and the court confirmed that the Echo Ditch Decree explicitly recognized the exclusive regulatory authority of the State Engineer over "'waters to be delivered to any water user' in the San Juan River Stream System, the Ralston Ditch included." *See* § 72-15-26 & Article XV(b) (determining the rights and obligations of each of the upper basin states of Colorado, New Mexico, Utah and Wyoming for the use and delivery of water of the upper basin of the Colorado River and its tributaries and affirming "the right or power of any signatory state to regulate within its boundaries the appropriation, use and control of water, the consumptive use of which is apportioned and available to such state by th[e] [C]ompact"). Nevertheless, the district court certified its ruling for interlocutory appeal on the grounds that "the meaning and application of *Turley* . . . is a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from this order may materially advance the ultimate termination of the litigation."

{11}     The Court of Appeals granted Petitioners' unopposed application for an

5

interlocutory appeal but after full briefing by both parties decided to quash the appeal. *See N.M. State Engineer v. Diamond K Bar Ranch*, No. 34,103, order quashing interlocutory appeal, ¶¶ 8-10 (N.M. Ct. App. June 25, 2015). We granted Petitioners' unopposed petition for writ of certiorari to clarify the extent of the State Engineer's statutory authority to administer the use of Animas River surface waters when the waters are diverted into an acequia in Colorado and applied to lands in New Mexico in the absence of a vested water right or permit. *See Davis v. Devon Energy Corp.*, 2009-NMSC-048, ¶ 11, 147 N.M. 157, 218 P.3d 75 (granting a petition for writ of certiorari after the Court of Appeals denied interlocutory review).

## II.    STANDARD OF REVIEW

{12}    We review de novo a district court's order granting or denying a motion to dismiss under Rule 1-012(B)(6) NMRA. *Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917. The district court's denial of Petitioners' motion to dismiss was based on its interpretation of the regulatory authority of the State Engineer. The State Engineer's power derives from statute and is "'limited to the . . . authority expressly granted or necessarily implied by those statutes.'" *Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2012-NMSC-039, ¶ 13, 289 P.3d 1232 (citation omitted). "We review questions of statutory and constitutional interpretation

6

de novo." *Id.* ¶ 11.

## III.    DISCUSSION

### A.    Relevant Constitutional, Statutory, and Administrative Framework for Surface Water Rights in New Mexico

{13}    Water law in New Mexico is governed by the doctrine of prior appropriation. *Id.* ¶ 40. "Under the doctrine of prior appropriation, water rights are both established and exercised by beneficial use, which forms 'the basis, the measure and the limit of the right to use of the water.'" *Walker v. United States*, 2007-NMSC-038, ¶ 22, 142 N.M. 45, 162 P.3d 882 (quoting N.M. Const. art. XVI, § 3). New Mexico adopted the prior appropriation doctrine rather than the common law riparian doctrine in part because "'[o]ur entire state has only enough water to supply its most urgent needs'" so that "'[i]ts utilization for maximum benefits is a requirement second to none, not only for progress, but for survival.'" *State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 34, 135 N.M. 375, 89 P.3d 47 (citation omitted). Consequently, water holds a unique place within our Constitution that is distinct from other natural resources. *See id.*

{14}    The New Mexico Constitution broadly provides that "[t]he unappropriated water of every natural stream, perennial or torrential, within the state of New Mexico, is hereby declared to belong to the public and to be subject to appropriation for

7

beneficial use, in accordance with the laws of the state." N.M. Const. art. XVI, § 2; *see also* NMSA 1978, § 72-1-1 (1941) (codifying N.M. Const. art. XVI, § 2 and similarly stating, "All natural waters flowing in streams and watercourses, whether such be perennial, or torrential, within the limits of the state of New Mexico, belong to the public and are subject to appropriation for beneficial use."). To effect this mandate, the Legislature delegated to the State Engineer the wide-ranging authority to manage New Mexico's water resources. *Tri-State Generation & Transmission Ass'n, Inc.*, 2012-NMSC-039, ¶ 34; *see also Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, ¶ 24, 147 N.M. 523, 226 P.3d 622 (discussing the "general purpose of the water code's grant of broad powers to the State Engineer").

{15}     The duties of the State Engineer include "general supervision of waters of the state and of the measurement, appropriation, [and] distribution thereof and such other duties as required." NMSA 1978, § 72-2-1 (1982). "The [S]tate [E]ngineer shall . . . supervis[e] . . . the apportionment of water in this state according to the licenses issued by him and his predecessors and the adjudications of the courts." NMSA 1978, § 72-2-9 (1907).

{16}     The diversion or application of water to lands in New Mexico absent a valid water right or permit is unlawful. *See* § 72-5-39 ("No person shall divert water or

8

apply water to land without having a valid water right to do so, or apply it to purposes for which no valid water right exists."). Accordingly, the Legislature also gave the State Engineer the authority to apply for an injunction in the district courts against anyone unlawfully diverting water or applying water to land without a valid right to do so. *See id.*

**B.      The State Engineer Has Statutory Authority to Regulate the Use of Surface Waters in New Mexico Regardless of Their Diversion Location**

{17}      Relying primarily on dicta in *Turley*, Petitioners argue that the State Engineer lacks the authority to require a permit or otherwise regulate Petitioners' use of Animas River surface waters for irrigation purposes when those waters have been diverted in Colorado and transported into New Mexico by the Ralston Ditch. They assert that because the Ralston Ditch is not a natural watercourse, *see* § 72-1-1, the waters it carries become private at the point of diversion in Colorado and thereafter are not part of the public waters of New Mexico subject to the State Engineer's jurisdiction. Not only is Petitioners' interpretation of *Turley* erroneous, but *Turley* is inapposite to the facts of this case.

{18}      In *Turley* the Territorial Supreme Court held that the territorial engineer of New Mexico lacked the authority to grant a permit for a proposed diversion from the Animas River in Colorado that would have conveyed water into New Mexico via an

9

artificial ditch because the jurisdiction of the territorial engineer did not extend beyond the territorial boundaries of New Mexico. *See* 1911-NMSC-030, ¶¶ 1, 4-5. As the district court in this case correctly noted, *Turley*'s holding limiting the State Engineer's extraterritorial authority is still good law but inapplicable here. Unlike in *Turley*, the State Engineer in this case is not seeking to exercise jurisdiction over appropriation of water in Colorado or construction of a diversion in Colorado but instead seeks to regulate the appropriation of surface waters in New Mexico for use on New Mexico lands.

{19}     The Territorial Supreme Court in *Turley* never reached the question Petitioners raise. *Id.* ¶ 2. Instead, it determined that whether the use of waters diverted in Colorado that entered New Mexico through an artificial ditch would be subject to regulation in New Mexico by the New Mexico territorial engineer was a "moot question" because the proposed ditch in *Turley* did not yet exist. *See id.* ("No part of the waters of the Animus [sic] [R]iver has come into New Mexico except by the natural channel. The proposed ditch for bringing it in exists only on paper and may never have any more substantial being . . . ."). In response to this hypothetical question, the *Turley* Court reiterated New Mexico's law of prior appropriation stating, "It is well settled that [natural waters] lose that character at the point of diversion as

10

soon, at least, as they are applied to beneficial use." *Id.* Petitioners misapprehend this statement to support their claim that once the waters of the Animas River are diverted into the Ralston Ditch they become "artificial" and "private" and outside the jurisdiction of the State Engineer.

{20} Diversion alone is not appropriation and does not create a water right. *See State ex rel. Martinez v. McDermett*, 1995-NMCA-060, ¶¶ 12-13, 120 N.M. 327, 901 P.2d 745 ("[M]ere diversion of water into a canal or ditch, without applying water to irrigating a crop or other valid use, does not satisfy the requirement of beneficial use."). Rather, an appropriation of water in New Mexico requires both a lawful diversion of water and application of that water to a beneficial use. *Snow v. Abalos*, 1914-NMSC-022, ¶¶ 10-11, 18 N.M. 681, 140 P. 1044. It is the application to beneficial use that gives an appropriator the perfected right to use the water. *City of Las Vegas*, 2004-NMSC-009, ¶ 34. This is a limited right subject to restrictions on "how [the water] may be used," the "quantity of water" used, a "specified purpose" of its use, and the "place of use." *Tri-State Generation & Transmission Ass'n, Inc.*, 2012-NMSC-039, ¶¶ 41-42 (internal quotation marks and citations omitted) ("'[T]he right to change point of diversion or place of use . . . cannot impair other existing rights and it may be enjoyed only when done in accordance with statutory

11

procedure.'" (citation omitted)).

{21} The New Mexico State Engineer is charged with regulation and enforcement of New Mexico water rights. NMSA 1978, § 72-2-18 (2007). In New Mexico, exercising an irrigation water right by putting water to beneficial use for irrigation of specified lands vests that irrigation right as appurtenant to those lands. NMSA 1978, §72-1-2 (1907) ("Beneficial use shall be the basis, the measure and the limit of the right to the use of water, and all waters appropriated for irrigation purposes . . . shall be appurtenant to specified lands owned by the person, firm or corporation having the right to use the water."); *see also Hydro Res. Corp. v. Gray*, 2007-NMSC-061, ¶ 18, 143 N.M. 142, 173 P.3d 749 ("The legislature has decreed, as an exception to the general rule [which makes water rights separate and distinct from land], that water rights are appurtenant to *irrigated* land." (emphasis added)).

{22} Petitioners' contention that diversion and conveyance of waters "by artificial means" such as a ditch renders the use of those waters private and not subject to the State Engineer's regulatory authority because they "never flow in a natural stream within the boundaries of New Mexico" is entirely without merit. To support this argument, Petitioners quote language from statutes and a number of cases addressing artificial waters. *See, e.g.*, NMSA 1978, § 72-5-27 (1941); *Hagerman Irrigation Co.*

12

*v. E. Grand Plains Drainage Dist.*, 1920-NMSC-008, ¶ 15, 25 N.M. 649, 187 P. 555. Artificial surface waters are "waters whose appearance or accumulation is due to escape, seepage, loss, waste, drainage or percolation from constructed works." Section 72-5-27. Authorities addressing artificial waters are inapplicable here. No authority holds that conveyance of waters "by artificial means" changes the source or character of those waters. The waters in the Ralston Ditch are diverted directly from the Animas River, a natural watercourse, and remain unappropriated natural surface waters upon entry into New Mexico.

{23}　　Moreover, water is incapable of full private ownership. *See Walker*, 2007-NMSC-038, ¶ 27 ("[W]ater rights are not considered ownership in any particular water source, but rather a right to use a certain amount of water to which one has a claim via beneficial use."). For over a century, New Mexico law has provided that what is owned by the water user is not the water itself but only the right to the use of a certain amount of water for a specified purpose. *See Snow*, 1914-NMSC-022, ¶ 11 ("The appropriator does not acquire a right to specific water flowing in the stream, but only the right to take therefrom a given quantity of water, for a specified purpose."). "All water within the state, whether above or beneath the surface of the ground belongs to the state, which authorizes its use, and there is no ownership in the

13

corpus of the water but the use thereof may be acquired and the basis of such acquisition is beneficial use." *State ex rel. Erickson v. McLean*, 1957-NMSC-012, ¶ 23, 62 N.M. 264, 308 P.2d 983; *see also Jicarilla Apache Tribe v. United States*, 657 F.2d 1126, 1133 (10th Cir. 1981) (applying New Mexico law and affirming that "[t]he state controls the use of water because it does not part with ownership; it only allows a usufructuary right to water").

{24}     Accordingly, the Animas River waters diverted into New Mexico by the Ralston Ditch remain natural, unappropriated, public waters of the State. Water is transformed from unappropriated to appropriated by putting the water to beneficial use, which requires an existing water right or a permit from the State Engineer. *See* § 72-5-1; § 72-5-39. The State Engineer has jurisdiction to regulate Petitioners' application to beneficial use of Animas River surface waters diverted in Colorado to the Ralston Ditch which conveys their flow to New Mexico. The regulatory role of the State Engineer includes its lawful authority to require Petitioners to apply for a permit to use this water where there is no existing water right.

**C.     Petitioners Are Not Exempt from the Requirement to Obtain a Permit for New, Expanded, or Modified Use of Waters from the Ralston Ditch**

{25}     Petitioners alternatively claim that the Ralston Ditch as a community ditch constructed in the 1880s does not require a lawful permit to divert water from it and

that Petitioners' pre-1907 water right also exempts them as individual users of that water from a permit requirement. We agree that the Ralston Ditch is an existing community ditch that does not require a permit to divert water under Section 72-5-2. But even for an existing community ditch, this exemption does not extend to changes in the amount of water appropriated or the location of use. *See* § 72-1-2 (stating that the rightful use of the water appropriated for irrigation purposes "shall be appurtenant to specified lands"); NMSA 1978, § 73-2-63 (1912) (stating that a community acequia established prior to March 19, 1907, need not apply for a permit to change the place of diversion "provided that by such change no increase in the amount of water appropriated shall be made beyond the amount to which the acequia was formerly entitled"). It is the acequia users that hold the rights to use water, not the ditch itself, which is the "carrier system" for those waters. *Snow*, 1914-NMSC-022, ¶ 14; *see also Wilson v. Denver*, 1998-NMSC-016, ¶¶ 18-19, 125 N.M. 308, 961 P.2d 153 (distinguishing between an interest in water rights which are dependent on the amount of water the individual users of the acequia water put to beneficial use and an interest in ditch rights based on the contributions of the individual users of the water to the construction of the ditch). The rights of users of the acequia water are limited and remain subject to regulation by the State Engineer, *see Tri-State*

*Generation and Transmission Ass'n*, 2012-NMSC-039, ¶ 41-42, despite that an acequia has an elected commission and mayordomo, *see* NMSA 1978, § 73-2-21(B)(2) ("The mayordomo . . . shall, *under the direction of the commissioners*, . . . perform . . . duties in connection with the ditch *as may be prescribed by the rules and regulations* of the same or as may be directed by the commissioners." (emphasis added)); § 73-2-21(A)(6) ("The commissioners shall . . . provide bylaws, rules and regulations *not in conflict with the laws of the state* for the government of the ditch or acequia." (emphasis added)). That is, "[i]f the water rights of an acequia have been adjudicated, then the State Engineer must approve *any change*, regardless of whether or not it is a community acequia." *Honey Boy Haven, Inc. v. Roybal*, 1978-NMSC-088, ¶¶ 2-3, 6-7, 92 N.M. 603, 592 P.2d 959 (emphasis added) (reviewing disputes over changes in an acequia's point of diversion from a creek, place of use of the water, and purpose of use of the water that were made without permits from the State Engineer).

{26}     It is undisputed that the waters of the Ralston Ditch were adjudicated in the Echo Ditch Decree. As set forth in the decree, Petitioners hold a valid water right and are not required to apply for a permit to exercise their pre-1907 water right, whether or not that right had been adjudicated. *See* NMSA 1978, § 72-1-3 (1961) (stating that

16

a holder of a pre-1907 water right may file a declaration of the right); § 72-5-1 (requiring anyone "hereafter intending to acquire the right to the beneficial use of any waters" to apply for a permit to appropriate water). Petitioners' vested right is still subject to regulation by the State Engineer. NMSA 1978, § 72-9-1 (1941) (stating that the water code shall not be construed to impair existing vested rights, although such rights "shall be subject to regulation, adjudication and forfeiture for nonuse as provided in this article").

{27}    The State Engineer is attempting to enjoin Petitioners' alleged improper use of a valid water right. Petitioners are alleged to be improperly irrigating land to which their valid water right is not appurtenant because it is not part of the acreage adjudicated by the Echo Ditch Decree. Petitioners are also alleged to be improperly using a quantity of water that exceeds the amount appropriated for use on the acreage adjudicated by the Echo Ditch Decree. It is within the jurisdiction of the State Engineer, and it is the regulatory responsibility of the State Engineer, to prevent any such illegal use. *See* NMSA 1978, § 72-2-8(A) ("The [S]tate [E]ngineer may adopt regulations and codes to implement and enforce any provision of any law administered by [the State Engineer]."). If Petitioners wish to acquire a new water right or modify their existing right to allow use of an additional quantity of irrigation

17

water or to allow irrigation on new land, Petitioners must obtain a permit from the State Engineer for a new appropriation or for a change in the place of use of their irrigation water. *See* § 72-5-1 (requiring an application to the State Engineer for a permit to appropriate the stated amount of water); *see also* NMSA 1978, § 72-5-23 (1985) (requiring an application to the State Engineer for approval of any change of place of use of water for irrigation purposes). Nothing in the permit exemptions Petitioners rely on suggests that they would not need a permit to use more water from the Ralston Ditch than they have a vested right to use or to use that water on land to which that vested right is not appurtenant.

## IV.  CONCLUSION

{28}     The use of waters diverted from the Animas River in Colorado that enter New Mexico in the Ralston Ditch is subject to regulation by the State Engineer. The State Engineer has the statutory authority to require a permit for new, expanded, or modified use of this water and, when such changes are made without its approval, to enjoin the illegal use. Accordingly, we affirm the district court's denial of Petitioners' motion to dismiss and remand this case for trial on the pending claims.

18

{29}    **IT IS SO ORDERED.**

                             _____

                             **CHARLES W. DANIELS, Chief Justice**

**WE CONCUR:**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**BARBARA J. VIGIL, Justice**

_____

**JUDITH K. NAKAMURA, Justice**